UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

MATTHEW VICK,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        No. 1:19 CV 232 CDP
                                       )
ANDREW M. SAUL,                        )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

## MEMORANDUM AND ORDER

Plaintiff Matthew Vick brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381 *et seq*.  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, the decision is affirmed.

### I.      Procedural History

On October 25, 2016, Vick filed applications for DIB and SSI benefits.  In his applications, Vick alleged a period of disability beginning October 14, 2016.  The applications were denied on February 9, 2017.  Vick timely filed an appeal for a hearing by an Administrative Law Judge (ALJ) on February 13, 2017, and a

video hearing was held on October 4, 2018, at which Vick and a vocational expert testified.  On January 28, 2019, the ALJ issued a decision finding that Vick was not disabled.  Vick appealed the ALJ's decision to the Appeals Council, which subsequently denied Vick's request for review on October 28, 2019; accordingly, the decision of the ALJ is properly appealable as the final decision of the Commissioner.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Legal Standard

To be eligible for benefits under the Social Security Act, Vick must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines 'disability' as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005).  At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments.  At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff*, 421 F.3d at 790 (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step Five and determines whether the claimant, with his RFC and other vocational factors, can perform other work as it exists in significant numbers in the national

economy.  If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step Four of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Id*.  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).  To that end, I must consider evidence that supports the Commissioner's decision, as well as any evidence that fairly detracts from the decision.  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted

4

one of those positions, I must affirm the Commissioner's decision.  *Id*.  I may not
reverse the Commissioner's decision merely because substantial evidence could
also support a contrary outcome.  *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th
Cir. 2017).  This statutory standard of review defers to the presiding ALJ, "who
has seen the hearing up close."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

### III.    Evidence Before the ALJ

With regard to Vick's medical records, testimony before the ALJ, and the
other evidence of record, the Court adopts Vick's Statement of Facts, as
supplemented by the Commissioner's Response to Vick's Statement of Facts.  ECF
13-1, ECF 16.  The Court's review of the record shows that the adopted facts are
accurate and comprehensive.  Specific facts will be discussed in the following
Discussion section as needed.

### IV.    Discussion

A. The ALJ's Decision

The ALJ determined that Vick met the insured status requirements of the
Social Security Act through December 31, 2022, and that Vick had not engaged in
substantial gainful activity since October 16, 2016, the alleged onset date of
disability.  (Tr. 19.)  The ALJ determined that Vick had the severe impairments of
obesity, depression, mood disorder, anxiety, and bipolar disorder.  The ALJ further

found that Vick had several non-severe impairments which did not significantly limit Vick's ability to perform basic work activities, including seizure disorder, venous sinus thrombosis, mild lumbar degenerative disc disease, carpal tunnel syndrome, allergic rhinitis, and hepatic steatosis.  (Tr. 20.)  At Step Three, the ALJ determined that Vick did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 20-21.)

At Step Four, the ALJ determined that Vick had the RFC to perform a range of sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a), and that

> [Vick] is able to lift up to ten pounds occasionally.  He is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks.  He is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  He is able to engage in frequent bilateral handling, defined as gross manipulation.  He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.  The individual was limited to jobs that could be performed while using a handheld assistive device such as a cane, which is required at all times when standing, and the contra-lateral upper extremity can be used to lift/carry up to the exertional limits.

(Tr. 22.)  In light of this RFC, the ALJ determined that Vick was not able to perform any past relevant work.  (Tr. 27.)  However, considering Vick's RFC and his age, education, and work experience, the ALJ found vocational

expert testimony to support a conclusion that Vick could perform work as it exists in significant numbers in the national economy, including in unskilled, sedentary occupations such as information clerk, table worker, and food and beverage order clerk. (Tr. 28.)  The ALJ thus concluded that Vick was not disabled as defined by the Social Security Act.  (Tr. 29.)

B.  Summary of Issues

Vick argues that the ALJ erred at Step Four in determining his RFC. Specifically, Vick contends that the ALJ erred by affording less than controlling weight to the opinions of two of Vick's treating physicians, D. L. Davis, M.D., and Cheryll D. Rich, M.D., who both opined that Vick's physical and mental disabilities imposed more significant work-related restrictions than the ALJ provided for in his RFC assessment.  Vick also argues that the ALJ failed to properly evaluate his subjective reports regarding his physical and mental limitations.  The Commissioner responds that the ALJ properly discounted the opinions of Dr. Davis and Dr. Rich, as well as Vick's subjective reports, because they were inconsistent with other substantial evidence of record.

C.  The ALJ's Step Four RFC Determination

A claimant's RFC is the most he can do despite his physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ

bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

In addition, because a claimant's RFC is a medical question, the ALJ is "required to consider at least some supporting evidence from a [medical professional]" and "should obtain medical evidence that addresses the claimant's ability to function in the workplace."  *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted); *see also Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (ALJ's RFC assessment must be supported by some medical evidence of claimant's ability to function in the workplace).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand."  *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing

712).  The burden to prove the claimant's RFC rests with the claimant, however,

and not the Commissioner.  *Pearsall*, 274 F.3d at 1217.  Moreover, on appeal, the

Court "review[s] the record to ensure than an ALJ does not disregard evidence or

ignore potential limitations," rather than ensure that each and every aspect of the

RFC determination is supported by citations to specific evidence in the record.  *See*

*Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018)

(internal quotation omitted).

   D. Medical Opinion Evidence

   Medical opinions are statements from acceptable medical sources that reflect

judgments about the nature and severity of a claimant's impairment(s), including

his symptoms, diagnoses, and prognoses; what he can still do despite his

impairments; and his physical and mental restrictions.  20 C.F.R. §§

404.1527(a)(1), 416.927(a)(1) (2017).[1]  The Regulations require that more weight

be given to the opinions of treating sources than other sources.  *Willcockson v.*

*Astrue,* 540 F.3d 878, 880 (8th Cir. 2008); 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).  A treating source's assessment of the nature and severity of a

---

[1] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence.  For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  Because the claims under review here were filed before March 27, 2017, I apply the rules set out in 20 C.F.R. §§ 404.1527 and 416.927.

claimant's impairments should be given controlling weight if the opinion is well

supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with other substantial evidence in the record.  20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2); *see also Forehand v. Barnhart*, 364 F.3d 984, 986

(8th Cir. 2004).  This is so because a treating source has the best opportunity to

observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a claimant's]
> medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective medical
> findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, the

Commissioner must look to various factors in determining what weight to accord

that and any other medical opinion of record, including the length of the treatment

relationship and the frequency of examination, the nature and extent of the

treatment relationship, whether the source provides support for their findings,

whether other evidence in the record is consistent with the source's findings, and

the source's area of specialty.  20 C.F.R. §§ 404.1527(c), 416.927(c).  The

Commissioner "will always give good reasons in [the] notice of determination or

decision for the weight [given to the] treating source's opinion."  20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2).

On January 27, 2017, Dr. Davis authored a short Medical Source Statement (MSS) in which he recorded Vick's impairments of left wrist pain, lower back pain, crepitus of knees, and bipolar disorder.  (Tr. 756.)  Dr. Davis noted Vick's use of a knee brace, wrist brace, and quad cane due to "recent falls," and that Vick was undergoing physical therapy and psychiatric treatment at the time.  Dr. Davis opined that Vick had a 70-100% possibility of recovery for his musculoskeletal issues with therapy, but he was unable to determine a recovery period for his bipolar disorder.  (Tr. 757.)  However, he opined that Vick could continuously sit, frequently stand, and occasionally lift and carry up to 15 pounds.  (*Id.*)

Dr. Davis authored a second MSS on May 15, 2017.  (Tr. 778.)  Dr. Davis noted Vick's symptoms of back, wrist, and knee pain.  (Tr. 799.)  Dr. Davis reported Vick's current treatment regiment, which included physical therapy and referrals for neuro, ortho, and psychiatric exams, as well as medications including Abilify, Klonopin, and Trileptal, with side effects of drowsiness, dizziness, lethargy, and sedation.  Dr. Davis opined that Vick could frequently lift/carry 10 pounds, could stand for less than two hours and sit for six hours, would frequently need to shift positions, and that he required a cane due to pain, weakness, and dizziness.  He further opined that Vick could occasionally perform postural

11

maneuvering, reaching, handling, and fingering.  (Tr. 780.)  Dr. Davis noted

throughout the MSS that Vick was "unable to work."  (Tr. 781.)  Dr. Davis drafted

a follow-up letter on May 23, 2017 that Vick had been his patient for 10+ years,

that he had seen very little improvement in Vick's overall health despite physical

therapy and specialist referrals, and that his health had declined over the previous

seven months such that he was not able to work.  (Tr. 777.)

Dr. Rich drafted an MSS on May 15, 2018.  (Tr. 857.)  Dr. Rich recorded

Vick's symptoms as lower back, knee, and shoulder pain, noting the back pain was

bearable with medication, but that his medication caused dizziness, dryness,

drowsiness, and altered sleep cycles.  Dr. Rich opined that Vick could occasionally

lift 10 pounds and never lift 20 pounds; that he could sit for six hours and stand for

two hours in a workday; that he would need to take two or three unscheduled

breaks and would be off focus for 15% of the day; and that he would have more

than four bad days per month.  (Tr. 858-59.)  However, Dr. Rich opined that Vick

was capable of low stress work.  (*Id*.)

The ALJ afforded some weight to Dr. Davis's May 2017 opinion as to

Vick's less than sedentary limitations.[2]  (Tr. 25.)  The ALJ considered evidence

---

[2] Vick only challenges the ALJ's assessment of Dr. Davis's May 2017 opinion finding him
incapable of low stress work.  Indeed, the ALJ afforded little weight to Dr. Davis's January 2017

showing that Vick regularly had a BMI over 40; that he ambulated with a large based quad cane and exhibited a slow but steady gait; that he had decreased range of motion in the lumbar spine and left knee flexion; and that he exhibited some decreased strength, with mild left upper extremity drift and weakness and mild left lower extremity weakness.  (Tr. 23-25, 531-532, 550, 581, 770-772, 807.)  The ALJ also noted that Vick was regularly observed without tenderness to palpation of the spine or joints; with full range of motion in his neck; 5/5 strength, with normal muscle tone and no atrophy; normal coordination, and a normal gait.  (Tr. 23, 531, 582, 803.)  The ALJ found this evidence to be "generally consistent" with Dr. Davis's less than sedentary opinion.  The ALJ determined, however, that Dr. Davis's ultimate opinion—that Vick was unable to work—was inconsistent with the record.  Similarly, the ALJ afforded only limited weight to Dr. Rich's opinion, concluding it was "inconsistent and far more restrictive than is warranted by the medical evidence."  (Tr. 26.)  Substantial evidence supports the ALJ's decisions to discount the opinions of Vick's physicians.

"An ALJ may give less weight to a conclusory or inconsistent opinion by a treating physician."  *Larson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (citation

---

opinion in part because she determined that Vick was unable to perform light work and required additional limitations in his RFC.  (Tr. 25.)  I will limit my discussion accordingly.

omitted).  The ALJ found that Dr. Davis's May 2017 opinion was both conclusory and inconsistent.  As to her first critique, the ALJ is correct—Dr. Davis's opinion is indeed conclusory, as it states that Vick is "unable to work" without reference to any specific medically determinable impairments, any treatment notes or other record evidence, or any specific vocational limitations.[3]  *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (holding that an ALJ may discount a checklist MSS if it contains conclusory opinions, cites no medical evidence, and/or provides little to no elaboration).

Moreover, Dr. Davis's May 2017 opinion, as well as Dr. Rich's opinion, are somewhat inconsistent with substantial evidence in the record as a whole, including Dr. Rich's opinion from January 2017.  The record evidence does not reflect that Vick's health significantly deteriorated between the issuance of Dr. Davis's conflicting opinions as to Vick's physical limitations.  On January 26, 2017, Vick began aquatic physical therapy.  (Tr. 758.)  Treatment records indicate that he tolerated treatment well; that he moved slowly but did not have an antalgic gait or difficulty entering and exiting the pool; and that his physical condition generally improved in the course of therapy—after four sessions, Vick's physical

---

[3] Additionally, the determination of a claimant's ability to work is an issue reserved for the Commissioner, and the ALJ was not obligated to afford Dr. Davis's assertion controlling weight, despite his status as Vick's longtime treating physician. *See* 20 C.F.R. 416.927, DI 24503.040.

14

therapists noted that Vick's pain, strength, and walking cadence/speed had all improved.  (Tr. 867, 871.)  Additionally, Vick's therapists routinely noted that he overexaggerated the severity of his pain symptoms and mobility limitations, making it difficult to reliably test and assess the full scope of his limitations.  (Tr. 762, 765, 771, 871.)

On April 5, 2017, Vick underwent a lumbar x-ray; the x-ray indicated mild disc space narrowing of three discs, suggestive of a mild degenerative disc disease. (Tr. 841.)  Vick was treated by Matthew Karshner, M.D., on May 8, 2017.  (Tr. 914.)  Vick indicated that his lower back pain was persistent.  On examination, Dr. Karshner noted a reduced range of motion and some posterior tenderness on percussion.  (Tr. 916.)  While Vick reported continued lower back pain and generally observed to have lumbar/posterior tenderness during visits with Dr. Darwin and Dr. Karshner on June 2, 2017, September 15, 2017, September 19, 2017, October 25, 2017, November 28, 2017, and February 2, 2018, no tenderness was noted by Dr. Darwin on September 6, 2017, and the aforementioned treatment records consistently note that his pain symptoms were relieved by various pain medications, including Norco, nabumatone (Relafen), and Lidoderm patches.  (Tr. 909, 894, 818, 817, 887, 886, 803.)

Additionally, although Vick fairly consistently reported left wrist pain to his providers, the record does not support his claim of disability.  On March 23, 2017, orthopedist Khalid Waliullah, M.D., examined Vick's left wrist; on examination, Vick noted some isolated pain to the touch, but Vick's wrist was otherwise essentially normal, with full range of motion, full flexion, extension, supination and pronation, full ability to extend fingers and make a fist, and no bone injury. (Tr. 838.)

In sum, these records constitute substantial evidence to support the ALJ's finding that Vick is not entirely disabled because of his medically determinable physical impairments.  They also constitute substantial evidence to support the ALJ's conclusion that Vick retains a greater degree of mobility and functionality than opined by Dr. Davis and Dr. Rich.  A physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2) (emphasis added).  Because Vick's physicians' opinions are inconsistent with substantial evidence in the record as a whole, the ALJ did not err in affording them less than controlling weight.

As for Vick's mental impairments, Dr. Rich opined that Vick was able to perform low stress work, while Dr. Davis opined that Vick was unable to work.

16

(Tr. 859, 777.)  The ALJ afforded limited weight to Dr. Rich's opinion, but

assessed both Dr. Rich and Dr. Davis's opinions concerning the extent of Vick's

limitations as somewhat inconsistent with the record.  The ALJ's decision to afford

less than controlling weight to these opinions is supported by substantial evidence;

while the record shows that Vick's mental health status has fluctuated throughout

the alleged period of disability, there is substantial evidence that Vick's conditions

are stable and controlled with medication, and that he retains the RFC to perform

low stress work.

The ALJ first discussed Vick's pre-application Individualized Education

Plan (IEP), in which Vick was observed to have average intellectual functioning,

low average academic knowledge, and good adaptive behavior, without delusions

or hallucinations.  (Tr. 25, 483.)

Next, the ALJ discussed the record evidence reflecting Vick's treatment for

depression, mood disorder, anxiety, and bipolar disorder.  In October 27, 2016,

Vick reported to Dr. Davis that he had been having difficulty focusing at work,

difficulty sleeping, inconsistent appetite, and some crying episodes.  (Tr. 584.)  Dr.

Davis noted that Vick had poor interaction and flat affect, but that he was not in

acute distress.  Vick was prescribed Zoloft.  (Tr. 585.)  A CT scan of Vick's head

revealed no abnormalities.  (Tr. 555.)  During a follow-up visit with Dr. Davis on

November 9, 2016, Vick reported feeling sluggish, and that the Zoloft was not yet helping; Dr. Davis continued the Zoloft prescription and referred Vick for neurological consultation. (Tr. 581.)

On November 11, 2016, Vick was seen by Shahid Choudhary, M.D., for a neurological exam. (Tr. 528.) Vick reported difficulty focusing, feeling depressed, and noted some intermittent numbness on the left side of his face and hip. On examination, Vick was noted to have somewhat hypophonic speech, but he was alert and oriented to name, place, and time, and not in acute distress. (Tr. 531.) On November 14, 2016, Vick reported to Poplar Bluff Regional Medical Center, where he was diagnosed with a probable pseudo seizure. (Tr. 550.) On examination, Vick was alert and oriented, not distressed, and able to follow commands, but noted to have slowed speech. (Tr. 550.) On Dr. Choudhary's recommendation, Vick underwent an EEG on November 17, 2016, which was within normal limits. (Tr. 622.) Vick was prescribed Clonazepam to alleviate his symptoms. (Tr. 640.) During a follow-up visit on December 8, 2016, Dr. Choudhary noted a normal neurological exam. (Tr. 836.) However, Dr. Choudhary opined that he believed Vick's symptoms were due to stress and anxiety with possible underlying depression, and that Vick should not return to work until his anxiety and depression were "optimally treated." (*Id.*)

18

Vick was voluntarily admitted to the hospital on December 27, 2016 reporting suicidal ideation with intent and unusual behavior.  (Tr. 713.)  Vick was diagnosed with a mood disorder, depression with suicidal ideation, and anxiety. Throughout his stay, Vick was generally observed to be cooperative, calm, alert and oriented, with a mood ranging from depressed to euthymic, with clear, coherent speech.  (Tr. 720.)  Vick denied any further suicidal ideation, and he was discharged on December 30, 2016 after his condition was noted to be stable and improved.  (Tr. 726.)  The record shows that he did not subsequently report any suicidal ideation.

The ALJ also discussed objective findings from Vick's treatment records after his December 2016 hospital admission.  (Tr. 24.)  In psychiatric counseling appointments with Dr. Davis and Dr. Rich, as well as Stacey Bruce, M.S.W, Linda Hammonds, P.M.H.N.P, and Naveed Mirza, M.D., Vick was observed with normal psychomotor activity; poor to good eye contact; soft/slow speech but within normal limits; cooperative behavior and appropriate responses; and exhibiting an appropriate appearance, generally depressed mood, poor to fair insight, fair judgment, and a flat, anxious, or appropriate affect.  Vick was also sometimes tearful, mildly irritable, and frequently expressed concerns about personal and family-related stressors in his life.  However, the record shows that Vick reported

some improvement from his psychiatric counseling, and his therapists and physicians generally noted that he had fair compliance with his prescribed treatment and medications.  (Tr. 830, 745-47, 738, 743, 944-46, 937-940, 927-932, 807, 815, 919-20, 952-53.)  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).

Finally, the ALJ considered and afforded substantial weight to the opinions of the two State agency consultants who reviewed Vick's file and opined that he retained the ability to perform simple, repetitive tasks on a sustained basis in a low stress environment, away from the public.  (Tr. 87-89, 108-09).  While the opinions of the state consultants were rendered before Vick's hearing before the ALJ (and thus before his medical record was fully developed), it is clear that the ALJ thoroughly reviewed the record evidence, that she weighed the consistency of the consultants' opinions against the objective findings, and that she did not rely entirely on the state consultant opinions in formulating Vick's RFC. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).  Accordingly, the ALJ's reliance on the opinions of the state consultants does not constitute reversible error. *See Stormo v. Barnhart*, 377 F.3d 801, 807–08 (8th Cir. 2004) (holding the ALJ properly used

evidence from state agency doctors in supporting the finding that the claimant's mental impairments were not disabling).

As with Vick's physical impairments, there is evidence in the record that Vick's medically determinable mental impairments impose some limitations in his ability to function, and it is well-established that individuals with mental impairments may occasionally experience periods of remission or less severe symptoms.  *See Mabry*, 815 F.3d at 392.  However, there is substantial evidence in the record which supports the ALJ's assessment of Vick's longitudinal mental health treatment, as well as substantial evidence to support her conclusion that Vick retains the RFC to perform a reduced range of sedentary, low stress work. Accordingly, even though some evidence may support a contrary conclusion, it cannot be said that the ALJ erred in affording less than controlling weight to Dr. Davis's and Dr. Rich's opinions.[4]  *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

---

[4] As for Vick's argument that the ALJ failed to discuss the relevant factors in assessing the weight to give to Vick's physicians' opinions, I note that the ALJ indicated that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." (Tr. 22.)  Although the ALJ did not discuss each of the factors in detail, the written opinion evinces thorough consideration of these physicians' records, and as discussed above, I conclude that she has adequately explained her reasons for discounting their opinions.

21

E.  Evaluation of Vick's Subjective Reports

Vick also asserts that the ALJ failed to properly consider his subjective

reports.  Specifically, Vick contends that the ALJ relied on mistaken classifications

of the record, overlooked relevant evidence, and failed to address factors that

supported Vick's testimony regarding his pain and limitations.  The Commissioner

responds by highlighting the ALJ's discussion of the record, noting various

inconsistencies between Vick's self-reports and the objective record evidence.

When determining a claimant's RFC, the ALJ must evaluate the credibility

of the claimant's subjective complaints.  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th

Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  In so doing, the

ALJ must consider all evidence relating thereto, including the claimant's prior

work record and third party observations as to the claimant's daily activities; the

duration, frequency and intensity of the symptoms; any precipitating and

aggravating factors; the dosage, effectiveness and side effects of medication; and

any functional restrictions.  *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir.

2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history

omitted).  The ALJ is not mechanically obligated to discuss each of the above

factors; however, when rejecting a claimant's subjective complaints, the ALJ must

make an express credibility determination detailing his reasons for discrediting the

testimony, and the ALJ's credibility assessment must be based on substantial evidence.  *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo. 2009).

The ALJ determined that Vick's medically determinable impairments could reasonably be expected to cause his alleged symptoms.  However, she found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 23.)  In making this assessment, the ALJ indicated that she evaluated Vick's complaints "in accordance with 20 C.F.R. 404.1529 and 416.929; and SSR 16-3p."  (Tr. 22.)  Substantial evidence supports the ALJ's finding that Vick's testimony was somewhat inconsistent with the record evidence, and so I conclude that the ALJ did not commit reversible error in her evaluation of his symptoms.

The ALJ's written opinion evinces a thorough review of the record and proper evaluation of Vick's subjective reports.  The ALJ discussed Vick's testimony concerning his daily activities, noting his ability to do laundry and other household chores, maintain personal care, shop, and interact with others.  (Tr. 22, 27.)  The ability to complete simple activities of daily living does not necessarily reflect an ability to perform the demands of an everyday job; however, such

admissions may properly be held to undermine assertions of total disability.  *See,*

*e.g., Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016); *Ponder v. Colvin*, 770

F.3d 1190, 1195 (8th Cir. 2014).

The ALJ also discussed the nature, duration, frequency, and intensity of

Vick's symptoms.  (Tr. 22.)  As discussed above, the ALJ reviewed the entire

record evidence and assessed Vick's self-reports as somewhat inconsistent with the

record as a whole, particularly with regard to his lower back pain and mobility.

(Tr. 23.)  An ALJ "may decline to credit a claimant's subjective complaints if the

evidence as a whole is inconsistent with the claimant's testimony."  *Julin*, 826 F.3d

at 1086 (citation omitted).  The ALJ also discussed the efficacy of Vick's treatment

for his physical and mental impairments, noting the specialists he visited and his

responses to the various prescription medications he received throughout the

alleged period of disability.  (Tr. 23-24.)

In sum, the ALJ examined the available medical evidence and summarized it

in detail in her written opinion, noting several inconsistencies between the record

and Vick's testimony concerning the limitations imposed by his pain symptoms.

The ALJ then developed an RFC with numerous restrictions to accommodate

Vick's well-supported functional limitations.  A reasonable person would find the

evidence cited by the ALJ to support her conclusions related to Vick's subjective complaints, and so I will affirm her decision here.  *See Anderson*, 696 F.3d at 793.

    F.  <u>Conclusion</u>

    Mr. Vick's testimony and medical records unquestionably show that he struggles with several physical and mental impairments.  However, the Court's role in appeals of this nature is limited—as noted above, the Commissioner's decision is assessed under a highly deferential standard, and I may not reverse an ALJ's decision if it is supported by substantial evidence, even if substantial evidence may support a different outcome.  *See Anderson*, 696 F.3d at 793.  Having evaluated the entire record in detail, I find that substantial evidence on the record as a whole supports the ALJ's decision.

    Accordingly,

    **IT IS HEREBY ORDERED** that that the decision of the Commissioner is **AFFIRMED**.

    A separate Judgment is entered herewith.


                                     _____
                                     CATHERINE D. PERRY
                                     UNITED STATES DISTRICT JUDGE

Dated this 19th day of February, 2021.